The undersigned have reviewed the prior Opinion and Award and find no good grounds for reconsideration of the evidence; rehearing the parties; or amending, modifying, or otherwise changing the prior Opinion and Award, except for the following minor modification in Findings of Fact Number 12 (Line 1) by adding the work "accident" after the words "motor vehicle."
There are Form 21 and 26 Agreements in the file which were approved by the Industrial Commission and are a part of the record. The parties stipulated that plaintiff was paid temporary total disability benefits from 28 August 1989 through 14 October 1990, except for brief periods when she returned to work.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 40-year-old high school graduate with two years additional vocational training from Cape Fear Tech in machines and industrial maintenance. She has limited prior work experience.
2. Plaintiff went to work for defendant-employer on 11 April 1988. She sustained an injury to her back at work on 15 March 1989 lifting a roll of material. Dr. Anderson diagnosed that injury as lumbosacral strain left flank, and advised plaintiff to return to work with no lifting greater than 15 pounds, and no repetitive bending and sitting. By 19 June 1989 the pain in her back was not bothering her but her neck and left arm were.
3. Plaintiff returned to work following this injury but reinjured her back again on 25 July 1989. She was seen at Medico Urgent Clinic on 31 July 1989. She gave Medico a history of reinjuring her back "jumping off deck of boat." Diagnosis was low back strain, and Tylenol and Flexeril were prescribed. Defendants admitted liability for this injury of 25 July 1989, and it is this injury that is the subject of this claim.
4. During her first and second visit with Medico after 25 July 1989 plaintiff did not mention anything about injuring her neck or left shoulder on 25 July 1989. It was not until 7 August 1989 that she mentioned that her neck was stiff. Medico referred plaintiff to Dr. Nance.
5. Plaintiff was first seen by Dr. Nance on 25 August 1989 at which time she complained of low back and left arm pain with some numbness in the ulnar fingers. Plaintiff told Dr. Nance that her left upper extremity complaints began two weeks earlier and were not associated with an injury. On first visit Dr. Nance diagnosed lumbar syndrome. By her next visit with Dr. Nance on 11 September 1989 plaintiff was complaining mostly of pain around the left shoulder girdle and left arm, radiating to the elbow whenever she used it vigorously. Dr. Nance's diagnosis was myositis left shoulder.
6. Plaintiff never gave Dr. Nance a history of injuring her left shoulder or arm at work on 25 July 1989. There is no history of an injury by accident involving her left shoulder and arm. Therefore, the undersigned does not accept Dr. Nance's statement in his October 1989 note that "plaintiff continues to have a work-related . . . strain around the left shoulder and low back" as evidence that plaintiff's left upper extremity complaints were caused by the injury of 25 July 1989. According to plaintiff's deposition testimony and Dr. Anderson's notes, plaintiff's neck and left arm complaints predated the 25 July 1989 injury to plaintiff's low back.
7. In December 1989 plaintiff came under the care of Dr. Parker, a neurosurgeon, for her continued complaints of low back and left arm shoulder pain. Plaintiff gave Dr. Parker a history of reinjuring her low back in July 1989 lifting heavy objects at work. With reference to her left arm symptoms, plaintiff gave Dr. Parker a history of onset sometime in August 1989 without any specific associated trauma. Dr. Parker prescribed physical therapy. By 15 January 1990 Dr. Parker felt plaintiff should be able to return to work February 1st in the job of screw sorter, which he subsequently approved in writing on 14 February 1990.
8. Plaintiff returned to work with defendant-employer sorting screws on 19 February 1990 for two days. Screw sorting was a regular task that must be done by someone at defendant-employer. This involved sorting screws by size and putting the different sizes in different cups. Plaintiff could sit or stand to do this job. She sat at a makeshift table with the box of unsorted screws to one side and the cups to sort them into on the table in front of her. The box of unsorted screws and the table in front of her were approximately knee high when she was sitting down. Her work station was set up on the second floor, up one flight of stairs. While she did have to ascend a flight of stairs to start work in the morning and after breaks, the job of screw sorter did not involve climbing or heavy lifting of any sort. While she may have had to lean forward to pick up a screw out of the box, she did not have to bend down at the waist. Plaintiff's claim that the constant bending, twisting, pushing, pulling and climbing allegedly associated with the job of screw sorter caused prohibitive pain in her neck, arm and back, is not accepted as credible.
9. After only two days as a screw sorter plaintiff unjustifiably refused to continue in this employment which was suitable to her capacity. Her employment with defendant-employer was terminated shortly thereafter when she failed to comply with company policy regarding calling in to report being out of work.
10. On 21 March 1990 Dr. Parker concluded that plaintiff had reached maximum medical improvement with reference to her lumbar spine and assigned her a five percent rating to the back for her low back complaints. Plaintiff's only restrictions with reference to her low back were that she should not lift over 15 to 20 pounds and should avoid bending, stooping, crawling or climbing.
11. On 16 February 1990 plaintiff was seen by nurse practitioner Garland Bruce Williams for complaints of a headache for two weeks and pain in the left side of the neck. Williams diagnosed tension headache but did not advise plaintiff to remain out of work. Plaintiff returned to Williams on 28 February 1990 with complaints of left sided neck, shoulder, and arm pain. At plaintiff's insistence Williams provided her with a work excuse to 6 March 1990, followed by light work to 21 March 1990. During these visits with Williams, plaintiff did not complain of low back pain, and Williams did not treat the low back.
12. In April 1990 plaintiff was involved in a motor vehicle accident wherein she sustained a whiplash injury to her neck.
13. On 14 May 1990 plaintiff was seen by Dr. Richardson at Duke on referral from Dr. Nance. This is the first occasion plaintiff gave any doctor a history of injuring her neck as well as her low back on 25 July 1989. MRI and EMG nerve conduction testing were normal. Dr. Richardson diagnosed chronic cervical strain and concluded that plaintiff was at maximum medical improvement on 3 April 1991 with a three percent impairment of her cervical spine. Her only work limitations were no lifting greater than 30 pounds and no use of the arms above shoulder level.
14. In 1993 plaintiff treated briefly with Dr. Marcus Williams, who diagnosed a collagen vascular disorder which he felt accounted for a vast majority of her continuing symptoms (aside from her low back) and which was unrelated to the injury of 25 July 1989.
15. At the hearing plaintiff complained of daily pain in her left arm, hand and neck which had gotten so bad a few months prior to the hearing that she could no longer look for suitable employment. She testified that she sees Nurse Williams for her constant headache, neck pain, and leg pain, when actually Williams has not treated her for her back or shoulder or neck since January 1991.
16. When Lynn Middleton, rehab specialist, attempted to assist plaintiff in finding employment in 1990, plaintiff unjustifiably failed to comply with job search efforts, primarily by failing to submit job applications as directed.
17. Defendants admitted liability only for a back injury on 25 July 1989. They did not admit liability for a cervical strain, cervical radiculopathy, tension headache, myositis left shoulder, or collagen vascular disorder. Given the onset of her neck and left arm complaints prior to 25 July 1989, the failure to complain from the outset of an injury to her neck, shoulder, or arm on 25 July 1989, the history of onset in August 1989 not associated with any trauma, the complicating diagnosis of collagen vascular disorder, and the absence of any medical testimony causally relating plaintiff's neck, arm and shoulder complaints to the injury of 25 July 1989, there is insufficient evidence of record for the undersigned to determine by its greater weight that plaintiff's neck and upper extremity complaints are causally related to the injury of 25 July 1989.
18. Considering only plaintiff's low back injury, plaintiff was released to return to work first in February 1990, but at that time unjustifiably refused to continue in work suitable to her capacity which was procured for her.
19. To the extent plaintiff may have been disabled after 20 February 1990 from earning the same wages she was earning at the time of the injury in the same or any other employment, the disability was not due to the lumbar strain of 25 July 1989; rather, it was due to the causally unrelated cervical and upper extremity complaints.
* * * * * * * * * * * * * *
Based upon the stipulations and findings of fact, the Full Commission enters the following:
CONCLUSIONS OF LAW
1. As a result of the injury of 25 July 1989 plaintiff was temporarily and totally disabled until 19 February 1990. G.S. § 97-29.
2. As a result of the injury of 25 July 1989 plaintiff sustained a five percent disability to her back. G.S. § 97-31(23).
3. Plaintiff is not entitled to compensation after 20 February 1990, when she unjustifiably refused work suitable to her capacity and then subsequently failed to comply with an Order of the Industrial Commission dated 24 September 1990 to cooperate with defendants' vocational rehabilitation efforts on her behalf. G.S. § 97-32 and G.S. § 97-25. Moreover, any disability plaintiff may have suffered after 20 February 1990 was not causally related to the lumbar spine injury of 25 July 1989.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants are entitled to a credit for all temporary total disability benefits paid after 20 February 1990, and plaintiff is due no further compensation at this time.
2. Defendants shall not be responsible for paying any medical bills plaintiff incurred for treatment of her neck, shoulder or arm.
3. Each side shall pay its own costs.
 S/ _____________ LAURA K. MAVRETIC DEPUTY COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________ J. RANDOLPH WARD COMMISSIONER
LKM/bp